New York County.— HON. D. C. CALVIN, Surrogate.—
November, 1877.

## MATTER OF HARVEY.

*In the matter of the estate of* EMILY HARVEY, *deceased.*

The jurisdiction of a Surrogate of one county, who has issued letters testamentary on probate of a will, cannot be attacked in subsequent proceedings before the Surrogate of another county, instituted by the executor to establish his right, as representing his testator, to administer upon another estate, which such testator, if living, would have been entitled to administer upon.

The surviving husband of a woman dying intestate is entitled to administer upon her estate (2 *R. S.*, p. 75, § 29), and if she dies without leaving descendants, he receives all the personalty, after payment of her debts, to his own use, as against her brothers and sisters.

Where such surviving husband had not, in his lifetime, taken out letters of administration upon his wife's estate, but they had been issued to his wife's sister, *Held*, that after the husband's death, and upon the petition of his executors, the letters so issued should be revoked, and new letters be issued to the executors.*

THIS was a petition for the revocation of letters of administration theretofore issued to Mary J. Odell upon the estate of the above-named intestate, and for the issue of letters of administration thereupon, to the petitioners.

The petition set forth that on or about the 28th day of April, 1876, at the city of Turin, Italy, Emily Harvey, the wife of Edward Harvey, departed this life, intestate, and without issue, leaving her husband surviving; that on or about the 9th day of June,

---

* See Matter of O'Niel (2 *Redf.*, 544), to the effect that the administrator of a husband who died after the death of his wife, and before taking out letters of administration upon her estate, is not entitled to administer upon the wife's estate.

1876, letters of administration upon the estate of the intestate were granted by the Surrogate of the County of New York to Mary J. Odell, a sister of the decedent, by reason, as is alleged, of false representations made to the Surrogate, in suppressing the facts that Edward Harvey had survived his wife, and that she had died without issue of her marriage with him, whereby he became entitled to letters of administration upon her estate, and the petition further alleged that Edward Harvey had subsequently departed this life, leaving a last will and testament, which had been duly admitted to probate by the Surrogate of the County of Kings, and that letters testamentary thereon had been duly issued by said last-named Surrogate to the petitioners. The Surrogate of the County of New York issued an order directing Mary J. Odell to show cause why the prayer of the petitioners should not be granted.

Upon the return day of the order, Mary J. Odell appeared and put in an answer admitting the allegations contained in the petition as to the death of Emily Harvey, the issue of letters of administration to her, and the grant of letters testamentary to the petitioners, as executors, &c., of Edward Harvey, deceased, but denying the other allegations of the petition. She also set up, affirmatively, a want of jurisdiction in the Surrogate of King's County to take probate of the will of Edward Harvey, deceased.

WINGATE & CULLEN, *for the petitioners.*

D. D. TERRY, *for the administratrix.*

THE SURROGATE. — The answer alleging want of jurisdiction in the Surrogate of King's County to take

probate of the will of Edward Harvey, cannot be litigated here. The decision of the Surrogate of King's County, upon the question of jurisdiction, is conclusive, and cannot be attacked collaterally, for the reason that the said Surrogate must, of necessity, have passed upon that question before he admitted said will to probate. (Roderigas *v.* East River Savings Institution, 63 *N. Y.*, 460; Bolton *v.* Brewster, 32 *Barb.*, 390.)

The Revised Statutes of this State (2 *R. S.*, p. 75, § 29) give to the surviving husband the sole right of administration upon the estate of his deceased wife, and by common law he was entitled to the exclusive enjoyment of all her personal estate. The only alteration of the common law rule, in this respect, is by the statute of 1867 (2 *Laws of* 1867, ch. 782, § 11, p. 1929), wherein it is provided that if a married woman shall die, leaving her husband her surviving, and shall also leave descendants, the distribution of her personal estate shall be one-third to said surviving husband, and the remaining two-thirds to her said descendants.

But in this case the intestate left no descendants, and the surviving husband was entitled to the whole of the personal estate of his deceased wife (subject to the payment of her debts), the same as before the enactment of 1867 (above).

It follows, therefore, that the sister of the decedent, Mary J. Odell, had no interest whatever in the estate under consideration, because, first, the statute gives the exclusive right of administration to a surviving husband upon the estate of his deceased wife.; and,

second, she has no interest whatever in said estate, she not being entitled to a single cent on the distribution thereof. (*Redf. Surr. Pr.*, 162; Barnes *v.* Underwood, 47 *N. Y.*, 351.)

The only remaining question to be considered is whether the executors, &c., of Edward Harvey, deceased, are entitled to letters of administration upon the estate of the intestate. There would be no doubt on this subject if the 30th section of part 2, chapter 6, title 2, article 2, of the Revised Statutes (2 *R. S.*, p. 75) had not been repealed by the said act of 1867 (2 *Laws of* 1867, ch. 782, § 12, p. 1929.)

The said section, thus repealed, provided that if letters of administration on the estate of a married woman should be granted to any other person than her husband, by reason of his neglect, refusal or incompetency to take the same, such administrator should account for and pay over the assets remaining in his hands, after the payment of debts, to such husband or his personal representatives.

I am of the opinion that the repeal of this section was not intended to restore the doctrine of the common law, but to adapt the statute to the provision of section 79 of chapter 6, title 2, part II. of the Revised Statutes (2 *R. S.*, 80), as amended by section 11 of the act of 1867 (above), for, by the amended section, the husband of a married woman who died leaving descendants, became entitled to the same share of her personal estate as she as his widow would be, under the statutes of distribution; while the 30th section, aforesaid, provided that all the personal estate of a deceased married woman, after the payment of debts, should be

paid to him or his personal representatives, and its repeal was doubtless to give effect to the 79th section so amended, as they could not stand together, though it seems to me that it was not needed for any purpose, for when it was settled that the husband was entitled to his wife's personal estate, after the payment of debts, it was a self-evident proposition that being entitled, though some other person for any cause should have obtained letters upon his wife's estate, the representative would be compelled to account, after the payment of her debts and the expenses of administration, to the husband entitled, or to his representatives, if he should be dead.

I am of the opinion, also, that too narrow an interpretation is sought to be given to the expression, "if he shall die leaving any assets of his wife *unadministered*," in section 29 (above), by confining the section to the case where the husband shall have taken out letters and administered only in part.

I think that if none of the assets shall have been administered, whether letters were issued to him or not, they would pass to his executors or administrators.

If we are obliged to refer back to the law as it stood under the old decisions and precedents, the same result is reached.

Upon this subject, Chancellor Kent, in his celebrated commentaries, says:

"It is also settled law that if the husband who has survived his wife, dies before he has recovered the choses in action, his representatives are entitled to that species of property, and in New York it would seem that the right of administration follows the right

of the estate." (2 *Kent's Comm.*, p. 136. See also Roosevelt *v.* Ellithorp, 10 *Paige*, 415; Lockwood *v.* Stockholm, 11 *Paige*, 87.)

It should also be borne in mind that the statute regulating the grant of letters of administration and the parties entitled thereto, after reciting the seven classes of persons who are entitled to letters of administration in the order of their preference, provides for an eighth class in these words: " Eighth. To any of the next-of-kin who would be entitled to share in the distribution of the estate." (2 *R. S.*, p. 74, § 27.)

This provision of the statute would, by necessary implication, exclude Mary J. Odell from any right to administer upon the estate of her deceased sister, Emily Harvey, for the reason that she is not one of the next-of-kin of the decedent entitled to share in the distribution of the estate; in other words, she is excluded on the ground that she has no pecuniary interest in the matter, and by a parity of reasoning, the pecuniary interest that the petitioners, as executors, &c., of Edward Harvey, deceased, have in the assets of the intestate's estate, is, in my opinion, a conclusive argument in favor of their right to letters of administration on the said estate, such right of administration following their pecuniary interest in the estate.

The letters of administration issued to said Mary J. Odell must be revoked, and letters of administration upon said estate should be granted to the petitioners, upon giving the usual bond required of administrators.

An order may be presented for signature upon two days' notice.*

---

* This case was affirmed on appeal, by the general term of the Supreme Court.