John D. Bennett, J.
In this probate proceeding objections were filed and a jury demanded by respondents George Farmer and Carolyn Warner. A motion is now made by them to dismiss the petition before any trial on the merits upon the ground that the decedent was not a (domiciliary) resident of Nassau County at her death on February 14, 1977 as specified in SCPA 206 (subd 1). They request that the proceeding be forwarded to New York County as the "proper county of residence” and also for the convenience of witnesses.
In support of the motion there have been filed affidavits of respondents’ attorney and of respondent, George Farmer, *8 along with copies of affidavits and exhibits which had been previously submitted to this court in connection with an application to revoke letters testamentary which had been issued to the proponent here on the estate of this decedent’s husband, John V. Coletti, who died on May 26, 1975.
In opposition to the motion various other facts are asserted to sustain proponent’s claim that Nassau County was the domiciliary residence of decedent and both attorneys have submitted memoranda in support of their respective positions. The court has examined them and will discuss below the various facts alleged by both sides.
The moving papers here argue that the marital domicile of this decedent and her predeceased husband was an apartment on 196th Street in New York County. They concede that she was injured in an automobile accident and removed to one or more New York City hospitals before going to a nursing home in Nassau County where she died. Movants contend only that as a result of a brain injury received in that accident her condition became progressively worse so that she became incompetent; that as a result of such incompetence she did not have the necessary intent to change her domicile and therefore it remains in New York County.
The proponent asserts in opposition the previous finding of this court (as to this more below); that the marital domicile was broken while both decedents were hospitalized when the husband authorized his brother (proponent here) to remove his clothing to the brother’s home in Old Westbury, Nassau County; that the husband’s bank accounts were also removed to this county pursuant to a general unlimited power of attorney which the movants concede was granted on April 21, 1975 to the proponent.
Proponent also asserts that the proceedings in Nassau County Supreme Court to appoint a conservator for decedent are res judicata on the question of this decedent’s domicile because it was held by the Justice presiding there in an opinion on February 19, 1976 that this decedent was then a "resident of the County of Nassau.; that she had not theretofore been judicially declared incompetent.” Proponent argues that the conservator proceedings and the finding of residence in Nassau County are binding upon the respondents because one of them and their present attorneys were parties therein, contested the appointment of this proponent as conservator and cross-pleaded for respondent’s appointment instead.
*9 The ruling of the court is that the finding of "residence” by the Supreme Court is not binding as res judicata or on collateral estoppel because that part of the decision referred only to venue of that court and was not an issue necessarily determined or essential to the appointment of a conservator under article 77 of the Mental Hygiene Law (5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.28; Hinchey v Sellers, 7 NY2d 287, 293, 296 and other authorities cited under note 170, Weinstein-Korn-Miller).
Other findings in the Supreme Court, however, were essential to the judgment and constituted a determination against movants’ allegations of fraud and falsity interposed therein as against this proponent. The Supreme Court also determined that the decedent had not been declared incompetent prior to that proceeding and of course it did not therein make any finding of incompetence.
The movants affirmatively allege that decedent was a "domiciliary” of New York County at the time of her death and that her residence continued specifically to remain in Manhattan at 561 West 169th Street, which concededly was the marital domicile. The change of that domicile, however, was determined by the earlier decision of this court in the decedent’s husband’s estate. Movant Farmer’s petition therein was dismissed, and properly so, upon the grounds that he lacked status — having no pecuniary or other interest in that estate. This court’s decision in that estate is now held to bind movants on the principles of equitable estoppel, or as res judicata not because of Farmer’s personal appearance or the part he played, but because both Farmer and Warner (the movants) are claiming here by privity with and through this decedent; the latter herself having been a party to her husband’s estate proceedings.
The finding of the husband’s domicile as a fact was necessary to jurisdiction in the earlier proceeding and binds the movants here whether by res judicata or the principles of equitable estoppel (5 Weinstein-Korn-Miller, NY Civ Prac, pars 5011.25 et seq. and the authorities cited therein). In the words of Judge Learned Hand, quoted in Hinchey v Sellers (7 NY2d 287, supra, p 293 [from Evergreens v Nunan, 141 F2d 927, 928, cert den 323 US 720]): " Tt is of course well-settled law that a fact, once decided in an earlier suit, is conclusively established between the parties [or their privies] in any later *10 suit, provided it was necessary to the result in the first suit.’ ” (Emphasis supplied.)
The arguments and assertions now presented clearly show there is no dispute that these two decedents had lived harmoniously together as husband and wife and had not been separated either by judicial decree or by choice, until his death. Under the settled law of this State the domicile of Lillian (the wife) necessarily followed that of John (the husband). It was so held in Matter of Daggett (255 NY 243) where the question was whether the Surrogate’s Court of New York County or the Surrogate’s Court of Orange County had exclusive jurisdiction of proceedings to probate the will of a wife. The Surrogate of New York County, and the Appellate Division upon appeal, held that her will was properly admitted to probate in New York County but the Court of Appeals reversed. The language of Judge Pound is not only interesting for its review of the law but is determinative here (p 246): "A woman upon marriage takes the domicile of her husband by operation of law and the legal domicile of the wife is prima facie that of her husband. (Hunt v. Hunt, 72 N. Y. 217, 242.) This rule, no doubt, is a creation and a survival of the theory of the common law that her very being was merged in that of her husband. (Williamson v. Osenton, 232 U. S. 619.) * * * Unity of person no longer exists but the husband is still the head of the family, the bread-winner in theory and duty if not in fact. He selects the place of abode of the family and it is the duty of the wife to abide by his decision unless it is unsafe or imprudent for her to do so. (Powell v. Powell, 29 Vt. 148, 150.) * * * It is his choice that governs, not hers, until he forfeits it. * * * Even her physical presence would not be required to effect the change. Her domicile or residence would follow his. (Hunt v. Hunt, supra.)” (Emphasis supplied.)
It would be anomalous for this court collaterally to reverse its prior decision based upon the movants’ present offer of proof which is contrary to its previous findings that the marital domicile was changed by the husband prior to his death.
These movants are now claiming, in other words, as distributees of the widow, that the marital domicile was not changed and continued to be at 169th Street even up to her death, despite the fact that this court had made a judicial determination in her husband’s estate, binding upon the widow, that he, and therefore both, were at his death domiciled in this county *11 at Guinea Woods Road in Old Westbury, Nassau County. And the same address was stated in the petition there as her residence!
The court has confined the foregoing discussion to the factual allegations of the parties. The motion, however, brings up a question of its jurisdiction worthy of deep analysis in the application of SCPA 206 which reads (in part) as follows:
"§ 206. Exclusive jurisdiction
The surrogate’s court of each county has jurisdiction exclusive of every other surrogate’s court over the estate of
1. any domiciliary of the county at the time of his death, disappearance or interment;
2. any non-domiciliary of the state who”.
That statute was adopted in 1966 and took the place of section 45 of the Surrogate’s Court Act with several changes but having the same caption referring to the exclusiveness of jurisdiction. In his practice commentaries to that statute (McKinney’s Cons Laws of NY, Book 58A, SCPA 206, pp 168, 169), Professor David D. Siegel noted that the term "jurisdiction” was used unequivocally but perhaps with "no policy reason for so rigidly adhering to the concept of 'jurisdiction’ ”. His analysis, however, warned that it does deal with the "comparatively rigid concept of subject matter jurisdiction as opposed to the ñexible concept of venue.” (Emphasis supplied.) He also cited the case of Matter of Connally (34 Misc 2d 132) which had in 1962 criticized the former section as being misleading and really adopted for the purpose of establishing venue rather than jurisdiction.
The courts have nonetheless applied the rigid concept where direct attack was made (of which Matter of Johnson, 259 App Div 290, affd 284 NY 733 and cited below, is only one example). However, this court recommends that the Legislature take under consideration a relaxation of that rigid approach by amending SCPA 206 so as to delete subdivision 1 and incorporate the substance in a different section treating all domiciliary inhabitants of the State as under the general subject matter of jurisdiction. Each one of the branches of the Surrogate’s Court in the various counties should be authorized to accept an estate, but subject to venue, depending upon the convenience of the court, the principal residence and location of assets of the decedent. This would then coincide with the principles expressed by the Court of Appeals as long ago as *12 1892 that, as between two or more counties of this State, "It is a matter of very triñing importance, except upon the mere question of convenience, which of such Surrogate’s Courts shall take the proof as to the due execution of the will, and grant letters testamentary thereon” (emphasis supplied; Bolton v Schriever, 135 NY 65, 73).
The fundamental reasoning in Bolton has never been overruled and the statements made therein are applicable today even though Surrogates’ Courts in 1892 had a much lower status in the judicial scale than they have today. They are no longer an agglomeration of separate courts which then had only very limited jurisdiction. "They” are now one State-wide court under article six of the State Constitution which became effective on September 1, 1962 and under the Surrogate’s Court Procedure Act enacted in 1966. That one court has full and complete general jurisdiction in law and in equity (SCPA 201, subd 3). Subdivision 10 of SCPA 103 accordingly defines "court” as "(t)he surrogate’s court, including any judge or surrogate assigned, elected or appointed to serve as judge of the court” (emphasis supplied). The court recommends a full reading of the Bolton case, particularly its recognition (still followed by the courts and statutes) that prime importance be given to the "subject matter” and "general” jurisdiction granted to the Surrogate of "each” county and its reference to "inhabitants” of the State (p 73).
Based upon the foregoing analysis the court finds that this decedent’s domiciliary residence was at Guinea Woods Road in Old Westbury, Nassau County, at the time of her husband’s death on May 26, 1975; that it continued unless and until superseded by a new domicile (Matter of Johnson, 259 AD 290, affd 284 NY 733); that unless proof is adduced that she changed it to New York County before her death on February 14, 1977, this motion must be denied. Accordingly, if the movants still wish to press their motion on the question of domicile, they will have the burden to show such change (Matter of Johnson, supra). Their present assertions to the effect that she was incompetent prior to the husband’s death are irrelevant to the issue. Neither have they shown sufficient reason to change the place of trial for convenience of witnesses.
This matter will appear on the calendar of this court on August 3, 1977 at 9:30 a.m. to ascertain whether movants *13 desire a hearing and tender an offer of proof acceptable to the court.
(Corrected decision, August 2, 1977)
Since the court issued its decision dated July 21, 1977, counsel for the respondent-movants called attention to certain inadvertent statements in the decision which do not affect the result but which are now herewith corrected.
The references in the decision to 196th Street should be corrected to read 561 West 169th Street.
The other item complained of relates to the time when the decedent’s mental difficulties allegedly began. Counsel asserts that his investigation shows (and therefore the respondents’ contention is) "that the decedent’s mental difficulties began a considerable time prior to the automobile accident and this will undoubtedly become a prime issue at the time of the trial.”
Accordingly, the corrections requested by counsel are accepted. It should also be noted that the prior decision dealt only with arguments of counsel and there were no findings of fact. The motion was denied with leave to movants to tender an offer of proof acceptable to the court and the decision stands, with permission to request a hearing if one is desired. The record is now corrected to show that movants made no concessions relating to the automobile accident.