Levine, J.
(dissenting). I respectfully dissent. In my view, the New York Constitution’s grant of broad, plenary powers to the Surrogate’s Court “over all actions and proceedings relating to the affairs of decedents, probate of wills, administration of estates” is amply sufficient to justify the exercise of jurisdiction in this discovery and turnover proceeding (NY Const, art VI, § 12 [d] [emphasis supplied]). There is nothing in the language of the pertinent provisions of the Surrogate’s Court Procedure Act or our precedents to justify circumscribing that expansive grant of power in this case.
The SCPA consistently has been interpreted as extending jurisdiction to the full breadth of that constitutional authority (see, Siegel and Conners, Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 201-202, at 49, 113-117). Indeed, the language of SCPA 201 could not be more broad:
“The court shall continue to exercise full and complete general jurisdiction in law and in equity to administer justice in all matters relating to estates and the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any action or proceeding, or between any party and any other person having any claim or interest therein, over whom jurisdiction has been obtained as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires” (SCPA 201 [3] [emphasis supplied]).
With respect to subject matter jurisdiction, the statutory grant of authority vis-a-vis the estate of a domiciliary and the estate of a nondomiciliary are indistinguishable. SCPA 205 states “[t]he surrogate’s court of any county has jurisdiction over the estate of a decedent who was a domiciliary of the state” (SCPA 205 [1] [emphasis supplied]). SCPA 206 similarly provides, “[t]he surrogate’s court of any county has jurisdiction over the estate of any non-domiciliary decedent who leaves property in the state” (SCPA 206 [1] [emphasis supplied]).
Although the role of an ancillary fiduciary in New York State often is restricted to administering those assets within the State, this limitation does not appear to stem from a lack of *605 subject matter jurisdiction, but because Surrogates, based on principles of comity and practicality, exercise their discretion to decide the appropriate scope of the ancillary proceeding (see, SCPA 1607 [1] [upon required papers, “the court may issue ancillary letters of administration”] [emphasis supplied]; SCPA 1610 [3] [ancillary administrator confined to limited powers but court may direct fiduciary to “otherwise dispose of the assets as justice requires”]; Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 1610, at 613 [role of the ancillary administrator extremely limited “unless the court orders otherwise”]; Matter of Heller-Baghero, 26 NY2d 337, 342 [rule of comity “truly is one of ad hoc discretion, to be exercised by the Surrogate”]).
The Court today nevertheless holds that a Surrogate presiding over an ancillary proceeding would be acting entirely beyond its jurisdiction in ordering those with information pertaining to estate assets, who are also subject to personal jurisdiction in this State, to submit to discovery or to turn over assets located outside of New York. This conclusion is supported by the proposition that New York, in making a determination affecting rights in property located outside of the State in this ancillary proceeding, would be usurping the role of the State where the decedent was domiciled (see, majority opn, at 593).
We do not know, however, from the record in this proceeding that the domiciliary fiduciary could act either in the domicile, or in the context of an ancillary administration in the Cayman Islands, to obtain personal jurisdiction over both respondents, or whether the relief sought here is available in those jurisdictions. Appellant Stern was appointed ancillary administrator upon the petition and expressly at the request of the domiciliary fiduciary. In his affidavit in support of the application for ancillary papers, appellant clearly stated that the purpose of commencing a proceeding in New York was “to enable [them] to conduct discovery proceedings in order to trace in excess of $1,200,000.00 that has been purportedly transferred to a trust in the Cayman Islands.” It is, thus, at least inferable that the domiciliary executor applied to Surrogate’s Court to have the New York fiduciary appointed because he was unable to get full and adequate adjudication of the issues and relief as against all parties in any other jurisdiction. Thus, foreclosing this avenue would be inconsistent with “the inherently supplementary purpose of ancillary proceedings” (majority opn, at 600) because it could effectively bar the ancillary fiduciary from accomplishing here what the domiciliary fiduciary is unable to *606 accomplish in the domiciliary jurisdiction or, indeed, anywhere else.
The rule that the majority adopts today will leave New York’s Surrogate’s Courts powerless to act not only in this case but in future cases, even when all principles of practicality, equity and convenience dictate otherwise. Subject matter jurisdiction is not something that can ebb and flow on a case-by-case basis but limits absolutely the power of the court itself, taking away all discretion to act in a particular circumstance (see, Matter of Rougeron, 17 NY2d 264, 271, cert denied sub nom. Rougeron v Rougeron, 385 US 899; People v Sturtevant, 9 NY 263, 269; see also, 25 Carmody-Wait 2d, NY Prac § 149:92, at 83).
There can be no dispute that, when entertaining a proceeding relating to the estate of a domiciliary, the subject matter jurisdiction of Surrogate’s Court is exceedingly broad, and extends to adjudging issues concerning property and persons beyond the State’s borders (see, majority opn, at 596-597; see also, SCPA 209 [4] [power “(t)o determine a decedent’s interest in any property claimed to constitute a part of his gross estate * * * and to determine the rights of any persons claiming an interest therein” part of the “(p)owers incidental to jurisdiction of the court”]; SCPA 2103). As the SCPA provisions quoted earlier demonstrate, the statutory grants of jurisdiction make no distinction whatsoever between the court’s subject matter jurisdiction when it entertains an ancillary proceeding and when it entertains a domiciliary probate or administration. In both instances, the SCPA grants the Surrogate’s Court “jurisdiction over the estate” of the decedent provided one of two, necessary jurisdictional facts are asserted: New York was the decedent’s domicile (SCPA 205) or the decedent left property witbin the State (SCPA 206). Nothing in section 206 distinguishes the “type” of subject matter jurisdiction conferred by that section from that conferred by SCPA 205.
The majority relies on the 1984 revision of the SCPA provisions governing the venue and jurisdiction of Surrogate’s Court for the proposition that the Surrogates’ jurisdiction is not extraterritorial when a nondomiciliary’s estate is involved (see, majority opn, at 597). These revisions were made, in part, in response to Surrogate Bennett’s decision in Matter of Coletti (91 Misc 2d 7), where he criticized the strict rule that afforded jurisdiction over a domiciliary’s estate only to the Surrogate’s Court of the county where the decedent was domiciled (id., at 11). Thus, the revisions were made to “change the[] provisions so that jurisdiction over the estates of domiciliary and non- *607 domiciliary decedents * * * is statewide” (Mem of NY Law Rev Commn, 1984 NY Legis Ann, at 87 [emphasis supplied]). The amendments do not distinguish between jurisdiction over a domiciliary’s estate and over the estate of a nondomiciliary.
Even more instructional in this regard is the language of SCPA 206 prior to the 1984 amendments. The statute provided:
“The surrogate’s court of each county has jurisdiction exclusive of every other surrogate’s court over the estate of
“1. any domiciliary of the county * * *
“2. any non-domiciliary of the state who
“(a) left property within that county” (SCPA former 206, added by L 1966, ch 953 [emphasis supplied]).
Thus, the same jurisdictional grant applied to both domiciliary and nondomiciliary estates. There is nothing in the legislative history of the 1984 amendments that suggests that the Legislature intended to change the scope of subject matter jurisdiction when a nondomiciliary decedent is involved (see, Mem of Trusts and Estates Law Section, Comm on Legislation, NY St Bar Assn, Bill Jacket, L 1984, ch 128, at 43 [“This bill would confer state wide jurisdiction on the surrogate’s courts, in a manner similar to the Supreme Court”]).
It is even more difficult to ascertain any distinction between the Surrogate’s Court subject matter jurisdiction when it exercises original probate or administration over the estate of a nondomiciliary (see, SCPA 1605, 1607) and when it entertains a proceeding ancillary to a domiciliary proceeding in another State, such as the one at issue. When exercising original jurisdiction over the estate of a nondomiciliary, the court’s subject matter jurisdiction clearly is not limited to intrastate property alone. When a Surrogate’s Court authenticates and interprets a will, for example, it necessarily makes a determination that impacts all of the property within a decedent’s estate, no matter where located. The court possesses full authority to adjudicate worldwide rights respecting the entire estate of the decedent and of all claims by any party over whom it has obtained personal jurisdiction (see, SCPA 209 [4]). Yet, just as in a “truly” ancillary proceeding, the subject matter jurisdic *608 tion of original probate or administration is premised on, and delineated by, precisely the same statute — SCPA 206.*
The majority draws a line between ancillary proceedings and nondomiciliary original proceedings, asserting that “the subject matter jurisdiction of New York’s Surrogate’s Courts is necessarily more embracive when it is the predominant tribunal for administering and preserving estate rights and assets” (majority opn, at 598). Although a Surrogate undoubtedly will be guided by different considerations when entertaining an ancillary proceeding than when exercising original jurisdiction, the nature of the proceeding does not divest the court of its jurisdiction. In an ancillary proceeding, a Surrogate should afford due respect to the primary proceeding in the decedent’s domicile, but the court’s power to act is limited by comity and discretion, not jurisdiction.
The cases cited by the majority for the opposite proposition are not to the contrary (see, majority opn, at 598). For example, Wedemann v United States Trust Co. (258 NY 315) does not address the subject matter jurisdiction of Surrogate’s Court but rather, the discretion that a Surrogate has in deciding the scope of an ancillary proceeding administration. There, the Court stated, “whether our courts will decree distribution of the assets collected under the ancillary administration or remit them to the jurisdiction of the domicile is not a question of jurisdiction but of judicial discretion depending upon the circumstances of the particular case” (id., at 320). The majority also quotes the following language from Matter of Turton (8 NY2d 311): “recognition [must] be given to the fact that there is but one estate and that primary probate or administration proceedings should be undertaken by the appropriate court of the decedent’s domicile, all other proceedings being ancillary” (majority opn, at 598 [quoting Matter of Turton, 8 NY2d 311, 315, rearg denied 9 NY2d 759]). The quoted language, however, omits the beginning of the Turton Court’s sentence which states: “Invoking the rule that comity among free nations has long required that * * * recognition be given” (id., at 315 *609 [emphasis supplied]). Thus, any restriction on the Surrogate’s powers contemplated in Turton appears to stem from principles of comity, rather than from a limitation on subject matter jurisdiction (see also, Matter of Heller-Baghero, 26 NY2d, supra, at 343-345 [principles of comity guide Surrogate’s discretion in deciding whether to exercise original jurisdiction]; 3 BoweParker, Page on Wills § 26.15, at 49 [rev ed] [“Judicial jurisdiction depends upon the recognition given to the judicial orders, decrees, and the like of one state by other states”]).
This Court’s decision in Lockwood v United States Steel Corp. (209 NY 375) further supports the conclusion that the Surrogate’s Court’s jurisdiction does not change when it entertains an ancillary proceeding. The majority relies on the lower court decision in Lockwood, which adopted precisely the argument advanced by respondents here, i.e., that the authority of an ancillary administrator “is strictly limited to personal property within the jurisdiction of the court” (id., at 379; see also, majority opn, at 602-603). Examining that very rationale, this Court stated in Lockwood:
“[A]n ancillary executor or administrator has the same general powers as a domestic executor or administrator except in disposing of the decedent’s real property for the payment of his debts and funeral expenses. * * * Ancillary letters are not less in their effect than other letters. ‘Apart from the statute, all administrations of estates in different countries are independent, so far as a matter of strict right or jurisdiction; but as a matter of comity all administrations in countries other than that of the domicile are ancillary to the principal administration’” (id., at 380 [citations omitted]).
Thus, the Court has previously considered, and rejected, analysis akin to that embraced by the majority today (see also, Matter of Re v Truck-A-Tune, Inc., 191 AD2d 327 [an ancillary administrator can direct a nondomiciliary to turn over automobile located in another State]).
Additionally, where an attempt was made to use some insignificant item of property located in the State to obtain jurisdiction over a foreign cause of action, this Court has rejected such efforts based on principles other than subject matter jurisdiction (see, Hoes v New York, New Haven & Hartford R. R. Co., 173 NY 435, 442 [invoking principles of fraud]; see also, Matter of Boda, 124 Misc 2d 464, 465-466 [finding an insufficient *610 jurisdictional predicate based on temporary presence of any property]).
Thus, there is scant judicial authority interpreting the SCPA’s plenary grant of subject matter “jurisdiction over the estate” to be absolutely restricted to property in the State upon the issuance of ancillary letters. This view is reinforced in the statutory treatment of the very proceeding at issue here, where SCPA authorizes extraterritorial discovery in “the court which has jurisdiction over the estate” — the subject matter jurisdiction expressly granted under SCPA 206 (SCPA 2103 [1]). The majority’s dictum that SCPA 2103’s discovery proceedings are not intended to apply, in general, to ancillary proceedings may have unintended regrettable implications (see, majority opn, at 601). Certainly it was not the purpose of the Legislature to restrict an ancillary administrator from utilizing this provision. Indeed, a common use of ancillary proceedings is to pursue a cause of action in the New York courts on behalf of nondomiciliary — a proceeding that clearly requires the use of, and is contemplated by, SCPA 2103 (see, SCPA 2103 [2]). The majority’s attempt to limit its holding to “this particular discovery exertion” (majority opn, at 602) only cuts against its own assertion that “[o]rdinarily * * * ancillary administrators should not be able to avail themselves of [SCPA 2103’s] benefits” (id., at 601).
In view of the foregoing, I conclude that the power of the Surrogate’s Courts to render decisions concerning foreign property is restricted by prudent discretion and principles of comity, not by any arbitrary limitation on its subject matter jurisdiction. Applying that reasoning here, any conflict with the domiciliary jurisdiction is largely obviated by the fact that the ancillary administrator is acting at the request of the domiciliary administrator. However, because the Appellate Division did not reach respondents’ alternative contention that the proceeding should be dismissed under a forum non conveniens analysis, I would remit this matter to the lower court for consideration of that argument.
Chief Judge Kaye and Judges Smith, Ciparick and Wesley concur with Judge Bellacosa; Judge Levine dissents and votes to reverse in a separate opinion in which Judge Titone concurs.
Order affirmed, with costs.

 The majority attempts to minimize the importance of section 206 by pointing out that it does not expressly refer to ancillary proceedings (see, majority opn, at 597-598). But SCPA 206 is actually the exclusive statutory avenue for obtaining jurisdiction over a nondomiciliary’s estate, regardless of whether the proceeding is ancillary or original. Thus, from the standpoint of statutory subject matter jurisdiction of the Surrogate’s Court, the distinction between original and ancillary proceedings under section 206, which the majority claims we have “pointedly overlooked,” is actually nonexistent (id., at 598).